NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KNIGHTS FRANCHISE SYSTEMS, INC., a Delaware Corporation,<br><br>    *Plaintiff*,<br><br>v.<br><br>ASHWINKUMAR PATEL, an individual; and KALAVATIBEN PATEL, an individual,<br><br>    *Defendants*. | Civil Action No. 16-1707<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

## I.  INTRODUCTION

This matter comes before the Court on Plaintiff Knights Franchise Systems, Inc.'s ("KFS" or "Plaintiff") unopposed motion for default judgment against Defendants Ashwinkumar Patel ("A. Patel") and Kalavatiben Patel ("K. Patel") (collectively "Defendants") under Federal Rule of Civil Procedure 55(b). The Court reviewed all submissions made in support of the motion, and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons that follow, Plaintiff's motion is denied.

## II.      FACTS[1] AND PROCEDURAL HISTORY

On or about June 10, 1998, KFS entered into a Franchise Agreement (the "Agreement") with Defendants for the operation of a 55-room Knights Inn® guest lodging facility (the "Facility") located at 6090 N. Blackstone Avenue, Fresno, CA 93710. Complaint ("Compl.") at ¶ 7. A. Patel and K. Patel agreed to operate a Knights® guest lodging facility for a fifteen-year term and to make certain payments to KFS "for royalties, service assessments, taxes, interest, reservation system user fees, and other fees," which the Agreement collectively referred to as "Recurring Fees." *Id.* at ¶ 9. According to the Agreement, Defendants owed interest to KFS on any past due amount at a rate of 1.5% per month or the maximum amount permitted by the applicable law, whichever is less, accruing from the due date until the amount is paid. *Id.* at ¶ 10.

Defendants were required to prepare and submit monthly reports to KFS disclosing, among other things, the amount of gross room revenue earned by Defendants at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees. *Id.* at ¶ 11. Furthermore, according to the Agreement, Defendants were required to maintain accurate financial information, including books, records, and accounts relating to the gross room revenue of the Facility and agreed to allow KFS to examine, audit, and make copies of the entries of these books. *Id.* at ¶ 12.

The Agreement provided that it could be terminated with notice to A. Patel and K. Patel for various reasons, including A. Patel and K. Patel's (1) failure to pay any amount due KFS under the Agreement, (2) failure to remedy any other default of their obligations or warranties under the Agreement within 30 days after receipt of written notice from KFS specifying the default(s) and/or

---

[1] The facts of this matter derive from the Complaint as well as the affidavits and exhibits submitted in conjunction with Plaintiff's motion for default judgment.

(3) receipt of two or more notices of default under the Agreement in any one-year period, whether or not the defaults were cured. *Id.* at ¶ 13. In the event of a termination, Defendants agreed to pay liquidated damages in accordance with a formula specified in the Agreement. *Id.* at ¶ 14. The Agreement provided that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." *Id.* at ¶ 15.

On or around September 29, 2006, after Defendants repeatedly failed to timely meet their financial obligations to KFS, KFS instituted litigation for outstanding "Recurring Fees" owed pursuant to the Agreement. *Id.* at ¶ 16-17. On or around November 30, 2007, judgment was entered against Defendants in the amount of $35,966.94. Of this amount, $29,520.00 represented Recurring Fees. *Id.* at ¶ 18.

On April 24, 2009, KFS sent Defendants a letter stating they were in breach of the Agreement, owing KFS approximately $86,771.12 in outstanding Recurring Fees. *Id.* at ¶ 19. The letter stated the Defendants had thirty days to cure this default or be subject to termination. *Id.* On June 25, 2009, KFS advised Defendants that they were in breach of the Agreement because they owed KFS approximately $90,734.37 in outstanding Recurring Fees. *Id.* at ¶ 20. The June 25 letter reiterated that Defendants had thirty days to cure this default or the Agreement might be terminated. *Id.* Then, on September 15, 2009, KFS advised Defendants by letter that they were still in breach of the Agreement because they owed KFS approximately $96,614.27 in outstanding Recurring Fees. *Id.* at ¶ 21. The letter again stated Defendants had thirty days to cure this monetary default, and if it was not cured, the Agreement might be subject to termination. *Id.* Finally, on April 2, 2010, KFS terminated the Agreement by letter, effective April 2, 2010. *Id.* at ¶ 22. KFS advised Defendants that they were required to pay KFS $55,000.00 as liquidated damages for

premature termination as required by the Agreement as well as all outstanding Recurring Fees through the date of termination. *Id.*

On March 29, 2016, KFS filed a five-count complaint against Defendants seeking payment of certain Recurring Fees, liquidated damages, interest, attorneys' fees, and costs of suit owed pursuant to the terms of the Agreement. After diligent efforts and inquiry, KFS was unable to locate Defendants to personally serve the Summons and Complaint. *See* Certification of Bryan P. Couch ("Couch Cert.") ¶ 5 (D.E. 7-2). On August 22, 2016, KFS served Defendants with the summons and complaint via regular and certified mail, return receipt requested. *Id.* ¶ 6. Defendants failed to answer, move, or otherwise respond. *Id.* ¶ 7. On October 6, 2016, default was entered against Defendants and KFS served a copy of the default on Defendants via letter that same day. *Id.* at ¶ 8-9. On October 28, 2016, KFS filed this motion for default judgment. *Id.*

### III.   LAW AND ANALYSIS

#### A. Standard of Review

"Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir.2005)). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

Prior to entering a default judgment, the court is required to: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Additionally, the Court must consider the following three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006).

Here, default judgment is improper because it appears that Plaintiff did not serve Defendants with the summons and complaint within the required time period. Federal Rule of Civil Procedure 4(m) provides, in part, that

> [i]f a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The Complaint and summons in this matter were issued on March 29 and March 30, 2016, respectively. D.E. 1 & 4. Thus, the Complaint should have been filed by the end of June 2016. After Plaintiff could not locate Defendants to serve them personally, Plaintiff served them via regular and certified mail, return receipt requested on August 22, 2016. The date Defendants were served falls outside of the 90-day period that the complaint and summons must be served.[2] KFS

---

[2] On October 6, 2016, the Clerk of the Court entered default against Defendants because they had not responded to the complaint within the applicable time period. The Clerk apparently relied on

also did not show good cause for failure to timely serve nor did KFS request that the time for service be extended. In fact, the exhibits attached to the "Affidavit of Effectuated Service," do not indicate the date of any activity until July 21, 2016. D.E. 5 at 4, 9. The exhibits reflect other actions taken regarding service, but they provide no dates as to when those activities took place. *See id.* Accordingly, default judgment is improper at this time. *See Travelodge Hotels, Inc. v. CPK, Inc.*, No. 13-4796, 2014 WL 2611836, at *2 (D.N.J. June 10, 2014) (dismissing motion for default judgment where service of summons and complaint was improper).

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for a default judgment is denied without prejudice. An appropriate order accompanies this opinion.

Dated: March 10, 2017.

_____
John Michael Vazquez, U.S.D.J.

---

the docket entry indicating service. Nonetheless, default should not have been entered in the absence of proper service. Therefore, in the order accompanying this opinion, the Court will vacate the entry of default.